Case number 231270, Lewis Chandler versus Mike Brown-Warden. Argument not to exceed 15 minutes per side. Mr. Monaghan, you may proceed for the appellate. Good morning, Your Honors. Matt Monaghan from SATO on behalf of Mr. Chandler. Mr. Chandler had a due process right to present a complete and meaningful defense. And that right gave him the opportunity to present witnesses to tell his version of the facts. His version of the facts got to the point of the adversarial system, which is the truth. And without that dual-sided presentation, the system just doesn't work. The state court had a chance to correct this error. The state court saw that this was preserved as a constitutional error. It saw the evidentiary dimension of it, but it didn't. Now this court can correct the error, and Mr. Chandler can show both an unreasonable application of due process precedent and actual prejudice as a result of this error. First to the right in question here. Chambers, Unger, Rock, Taylor, they promise that you have more than a lawyer and more than cross-examination when you get to the jury. They say that you can't choose expediency over the investigation that the counsel has an obligation to do for their client. That you can't choose a rush to trial over getting the facts straight in the pretrial process. Then you have a right to present your facts. And it's not just in a murder case. It's not just in a robbery case. This is one of those AEDPA cases, like the White, Panetti, and Quarterman line, where a general rule that is just so fundamental, it applies across the board even if this is one of those factual permutations that doesn't line up perfect. AEDPA doesn't require that. Are you asking for an extension of AEDPA, or do you feel that you fit fully within the cases? My memory is not that I have seen a case that speaks to a fundamental right to present meaningful defense that includes the right to call witnesses to present propensity evidence about another witness. What's your best case? Best case there, Your Honor, is, well, I think the best case there is White, Panetti, and Quarterman. That says in AEDPA, you don't need that square-on, one-to-one factual match. And the right in Chambers says you have the right to present a defense in any case. They had every opportunity, the Supreme Court, to qualify that right in a case like Chambers or Taylor, where the issue is identity, where the issue is who did it. In a murder case or a robbery case, that's frequently going to be an issue that the jury needs to decide. But you have that defense, too, when the issue is credibility. And in credibility, you're going to have a different basket of evidence that speaks to that central issue. So it's not that there is one on-point case that speaks to the right to present propensity evidence. It's that the right to present a defense is true no matter the charge. It doesn't change based on what the state brings. And in any case, the defense does not have to rely on the state's witness list to prove its or to at least make its case and get at the litigatable issue. What about the fact that there were so many other witnesses that spoke to actions of your client that were not a part of his presentation but provided a record that included indications that a jury might find guilt from? Three distinct responses to that, Your Honor. One, all the more reason for Mr. Chandler to present his evidence that her allegation fit a pattern. When foster parents took steps to adopt her, she alleged abuse. And Mr. Chandler had prior foster parents who could have testified to that. He had other witnesses as well, which I'd like to get into in a moment. But the second answer to that, Judge, is that evidence doesn't look as strong when you have both Mr. Chandler's defense, which didn't come in, and what he had tried to present to the jury through question and argument, which was this was a complex and fractured family. They were arguing over money and land. And the jury, in order to get to conviction here, had to credit A.C. She's the only direct evidence of it. So yes, there are these other acts of evidence. But all of them have some connection to this family. They have some connection to Mr. Chandler's son, Lou Jr., or Lou Jr.'s wife. And the jury has to decide, is this a family that is just so kind of irreparably broken and fighting with one another that they would do this to Mr. Chandler, or is this true? And in getting to that question, Mr. Chandler's evidence was really essential to helping them get to the truth in that matter. The third piece, judges, I want to go back to why this error is so problematic, and it's the failure to get a continuance. We're not just thinking here, I think, about propensity evidence. We're also thinking about what just never comes to light because this goes to trial 75 days from arraignment in the face of multiple written and oral requests for an adjournment so counsel can consult with an expert that he followed the rules to get so that counsel can go investigate foster care records, which are distinct from the CPS records in this case. It's a pretty difficult standard to show that the court abused the court's discretion in the management of the trial. It is. In his courtroom. What makes this one distinct? What makes this one distinct is that the state court of appeals agreed this was an abuse of discretion. The state court of appeals had every chance to say, no, this is, you know, it's a busy state court docket and, you know, you've got to get cases moving. They didn't say that. They said in almost unequivocal terms, there was no reasoned or principled basis to send Mr. Chandler to trial that quickly. There was no reasoned or principled basis to deny him an expert who could have countered what the state's expert said, which is that children's memories can improve over time so that they get more details. Mr. Chandler's expert could have said, I doubt that. There are studies that say the opposite, that when you have increased detail years later, that's a red flag. Why was the opportunity to cross-examine those witnesses not sufficient to present a defense? Two reasons. One, take A.C.'s testimony in this case. She's asked point blank, did you fabricate these allegations to manipulate the foster system? No. She says no. And you're stuck with her answer. If the Hamblins can come in, if Helen Samples can come in, Helen Samples is the CPS caseworker, or if there's a chance to investigate the Kent County probate judge who makes findings and says, we can't credit her, and there's a pattern here, if counsel had a chance to go find the witnesses in that matter, the respondent in that matter, you've got witnesses who can come in who have no stake, and this is point two here. These are witnesses who have no stake in this trial. They don't know the Chandlers. They are not involved in the criminal charges. They're an independent authority on this person and what is really happening here. And that gives the jury a whole different hook to hang a hat in favor of Mr. Chandler. And that's why the cross just doesn't tell the full picture. You don't see her pattern, which she denies, and you don't see the independent third party agencies, one of whom, and I think this is important as to Ms. Samples, she has a duty to act in AC's best interest. She is a foster care agency caseworker and she says in her reporting that trial counsel has on the day or a week before trial, she says I have serious doubts about this allegation based on this pattern. The jury hears the reasons to bolster AC. They hear none of the reasons to doubt her. So it's really difficult for the defense to rely on cross alone when you just can't back it up with the evidence that due process promises you. Can we circle back, Counselor, to the cross examination of the expert witness in particular? So granted, your client's expert was not allowed to come in. However, the court had allowed for payment to an expert and presumably there was some consultation in advance of that. Why wasn't that enough to at least allow counsel to prepare for a very specific and direct cross examination of the government's expert and to get to some of these things that you're talking about and in particular to ask about Brad and how it could or would affect a minor who is testifying about these types of activities? Can I take that question in three parts, Your Honor? Absolutely. One part is it's 25 days before trial, this expert. He gets the funding for this expert. And just the practical reality of building a state court criminal case, really any criminal case, that is next to no time to find the expert, find the documents, get the expert time to review them, then have a meaningful consultation with that expert so that you can decide strategy, let alone develop an effective cross. The truncated time here is alone reason to doubt whether the ability to cross the expert was enough given the, and I think trial counsel says this, I really haven't even given my expert everything about false allegations in this case. Come first day of trial, the trial counsel and the expert have not been able to have the meaningful consult that would lead to a meaningful cross. Part two of the answer, I think, Judge, is expert testimony is powerful. That's the purpose of 702. It's, you need more than cross-examination in a case like this where the state's expert doesn't give the defense presentation of the facts, doesn't talk about how reactive attachment disorder can explain why somebody might make allegations like this against foster parents. The inability to forge bonds with caregivers can get you down to where or why this is happening without attacking directly the child in the matter. So that's an important avenue for the defense and a way to get evidence in support. In addition, there is a problem when a state's expert says, without any rebuttal, memories in children about abuse can sharpen over time as they tell it more. If that really is a disagreement in the science, and it is here, and the defense has an expert to present the other side, that's where juries need both sides. They can't rely on cross alone because the state's expert isn't going to present the other side of the story. Your time is up. Thank you. You'll have your rebuttal time. Thank you, Your Honors. Good morning, Your Honors, and good morning, ladies of the court. Assistant Attorney General Jared Schultz on behalf of the respondent. I'm sorry, Your Honor. Jared Schultz on behalf of the respondent. We are asking for this court to affirm the district court's decision denying habeas relief here. There are two ways that this court can go about doing that. I think there is a very straightforward way under harmless error analysis under Brecht, but I also want to briefly touch on the underlying constitutional claim here. Under AEDPA, the petitioner must show that no fair-minded jurist would agree with what the Michigan Court of Appeals did here in denying the claim. And to prove that, the petitioner has to show that there is a holding from the Supreme Court that the state court unreasonably applied. He can't do that here. He points to a couple different cases, Chambers v. Mississippi. He points to Washington v. Texas. Those cases don't stand for the proposition that a defendant has the right to present whatever evidence and whatever witnesses that he wants. Does he have to have that blanket of rule in order to have shown that he was denied a meaningful opportunity to present a complete defense? No, Your Honor. In fact, under AEDPA, you can have a general principle of law. The problem with that is the more general the principle of law is, the more leeway the state court has to apply that principle. Here, what we have is propensity evidence, as Your Honor mentioned. We don't have direct evidence, witnesses who have direct knowledge of the underlying facts of the crime for which the defendant is on trial. You argue that Trombetta requires that. Why do you think that case establishes that type of rule when it seems to me that that case is, that is a factual portion of that case, a case in which the complete opportunity to present a defense is found to be a constitutional right? But that doesn't mandate, in your view, does it? That you can't have that right breached unless you are talking about a factual witness. No, Your Honor. I think you're right about that. I think that's what that case held. But if there was a case that held that there are certain propensity witnesses that you can't, or you have to allow them to present, and if you don't, there's a violation of the right to present a defense, then it would be a different case here. But we don't have that. So he cannot rely on those cases that make those specific factual holdings under AEDPA. He can rely on the general rule that you have the right to present a defense. But that is their... Well, if you have a right to present a complete defense, and my concern here is that all, all of his witnesses were denied the right to testify. Experts, information people, background, propensity witnesses, nobody was allowed to take the stand. And isn't this about presenting a complete defense? How can you present a defense if all you can do is ask questions of the person that you are trying to show is not credible, and then in the judge's own words, you have to take their answer? Right. So I guess I have two responses to that, and they both go to the evidentiary hearing. This claim was presented to the Michigan Court of Appeals. The Michigan Court of Appeals, in fact, had oral argument before they decided, okay, well, we'll consider your claim. Let's have an evidentiary hearing and prove what you can show, what your witnesses would have said. At that evidentiary hearing, he did not testify to a pattern of false allegations. He didn't come up with this Helen samples that the petitioner points to. All he came up with was one expert and one foster care mother. So talking about this pattern, he wasn't precluded. We can't consider that when we're talking about evaluating this constitutional claim. We consider what he was allowed to approve and what he did prove at the evidentiary hearing, and that is only that two witnesses testified. And those two witnesses, it was presented at trial. And I understand... Everything that they said, he was allowed to cross about at trial, but his information was, in fact, not presented to the jury. Isn't that correct? Well, his information was. It was in a different manner, and I understand that. But... Didn't she say that she didn't lie? Correct. She said she didn't lie. However, a CPS worker also testified prior allegations, and the petitioner's wife testified at trial that essentially she lied prior, that there were prior allegations and that they should watch her. So there was information. Everything that they testified at the evidentiary hearing was presented at trial, albeit, I understand, in a different manner. But to say that all fair-minded jurists would say that there was a denial of a right to present a defense here, I don't think you can say that given the very general rule of law that we have from the Supreme Court on this issue. So unless there are any other questions on the underlying claim, I'm going to go to the harmless error analysis. This is a straight application of Brecht, so it's not the prosecutor's burden to prove harmlessness. It's the petitioner's burden, and he has to prove that there's a substantial and injurious effect or influence on the jury's verdict. I don't think he can prove that here, and there's three reasons. First, as we've kind of already talked about, the evidence was already admitted at trial. What he wanted to present in a different manner was presented at trial. To say that it had a substantial effect on the jury's verdict, just that the evidence would have been presented differently, I don't think can be the case. What about the problem? I'm concerned that it appears that the court employed procedural rules to deny an opportunity for most of these, for all of that list of witnesses to testify, but I'm looking at the timeline. The time when an expert was requested, the time when the money was made available, there was, in fact, no time to do what the court was saying should have been done. So why, in the face of that factual circumstances, is there not a problem? Well, I would, I guess, push back on that just a little bit, because I really am not convinced that what the trial court did here was right. If I was a trial court... The Court of Appeals was not convinced. Right, correct. They were convinced that the court abused his discretion. Right, I just want to point out one thing, and that is that the prosecutor gave the CPS report that said that there were prior false allegations, back on May 11th, I believe it was, which was almost two months before trial. Yes, he didn't move for an evidentiary, or excuse me, to have an expert witness appointed until five weeks later. That's five weeks that he could have at least moved for an expert, and he doesn't explain why he waited for five weeks. Well, maybe it's that it was not until mid-May of 2015 that he received the first patch of discovery documents. Right, and I understand that it's late, but that's almost two months before trial. What I'm just pushing back at is this wasn't two weeks before trial, like he points out, because that's when they requested a continuance. He had the evidence that there was prior false allegations in mid-May. Now, again, I don't want to get bogged down too much in this, because I'm not arguing here that what the trial court did was right. As you mentioned earlier, Judge Stramps, it's a pretty tough burden to prove that the trial court abused its discretion. But I guess I just will push back again. We're not saying that the trial court abused its discretion here or didn't abuse its discretion. We're saying that it was not contrary to an unreasonable application of clearly established federal law for the Michigan Court of Appeals to say in light of that, there is no evidence, or there was no denial of the right to present a defense. So did the state court look at this as a constitutional issue? In a footnote, yes, it did.  Correct. And there's nothing wrong with putting a claim in a footnote. Did it look at it as a constitutional issue or did it add a footnote that says we're not addressing it as a constitutional issue? I believe what it said was we are looking at it as a constitutional issue and he has not proven that there was a constitutional violation here. Then it went on to say because he hasn't proven a constitutional violation, we don't have to do a Chapman analysis. In the rest of its opinion, what it did was say there was an abuse of discretion here so we're going to address prejudice under state rules. It did not address harmlessness under Chapman. I agree with that. Let's say we conclude that there was a constitutional violation. But the state court never engaged in a Chapman analysis.  But you said it's a straightforward EDFA case and I think you were saying that we don't apply, well, what do you think we apply? A Brecht analysis? A straightforward EDFA case for the underlying constitutional claim. If this court believes that there was a constitutional error, because this is habeas, it's Brecht. There's no EDFA analysis of the prejudice that the Mission Court of Appeals engaged in. It's just Brecht. There's no determination to defer to, right? Correct. That's correct. And under Brecht, again, it's... I'm sorry. I want to make sure we're on the same standard because isn't the rule here that whether there are grave doubts about whether the denial of his right to present a meaningful defense had substantial and injurious effect or influence in determining the jury's verdict? That's correct, Your Honor. That's the standard. I apologize if I said something that was wrong or that you're not understanding. I'd be happy to clear that up. Okay. So, again, I guess, you know, maybe where the confusion is coming from is under Brecht, under Chapman, it's the prosecutor's burden to prove harmless error beyond a reasonable doubt. Under Brecht, that is not the standard. Because we are on habeas relief, because this is collateral review, it is a tougher standard for the petitioner to meet. But it's... But we're not deferring to anything. We are asking ourselves. It has nothing to do with whether other fair-minded jurists. We're asking ourselves whether we have grave doubt. That's correct. I guess what my point is, it's a tougher standard for the petitioner to meet than the Chapman harmless beyond a reasonable doubt standard. And I think, you know, under Brecht, I already pointed out that there's, you know, this evidence is already presented. We also have to look at the strength of the prosecution's case here. And I think there was, this was a strong case. We have... There was an argument made by the prosecution there. However, again, at the evidentiary hearing, he didn't present all of these evidence that there were prior false allegations. He presented one single former foster mother who said that she made prior allegations. To say that this defense wasn't fleshed out, I don't think you can say that, because a single foster mother testifying that a six-year-old lied about everything that she ever said, I don't think would come across as overcoming the powerful evidence that was presented at trial in the form of the other witnesses, the other act witnesses, who testified that they were also abused in a similar manner by Mr. Chandler. There was also, I really want... What are some of those 50-year-old... These are some really ancient kinds of claims that would have been from when he was a child. It's not that that's not valuable evidence. It's whether the other side has the opportunity to present something that the jury may need to hear. I think we all agree that grave doubt, which Judge White is indicating is the standard for us, if it's in virtual equipos, if we think it's a balanced deal, that's grave doubt. That's correct. Again, I will point out that one of the other act witnesses was a 40-year-old case. The other were recent. One, I think, was maybe 10 years old, but the one that was very similar was an eight-year-old that occurred, that triggered this investigation back into the witness at issue here. They're not all ancient cases. I think that makes it a little bit more powerful. I also want to point out that the petitioner's wife testified here. She provided direct evidence that the abuse occurred here, that the assault occurred. She said, hey, listen, I saw something. It didn't appear proper. I think it looked right. No, she didn't testify to a specific sexual act occurred, but she immediately, after seeing something that didn't look right, she the next day reported it to the foster care agency, which triggered an investigation and got the husband to leave the house. She came at trial. She had something against her husband. She didn't want to be there. She avoided her subpoenas, so I think that provides some pretty powerful evidence for providing direct evidence that he assaulted the victim in this particular case. So, and again, I don't think that had he been able to present testimony from his own expert and one foster care mother that she may have lied in a previous instance, I don't think that overcomes that powerful evidence, and I don't think this court should have grave doubt as to the harmlessness here. Thank you, Your Honor.  I'd like to begin with that footnote, if I could. Given the state court's every benefit of the doubt, there's an adjudication of a constitutional claim here, and it is an unreasonable application of all the due process precedent. Mr. Chandler said, I needed more time via continuance, and I needed witnesses. Unger, Chambers, Taylor, and Washington the state... Why did he only present the two witnesses at the hearing? Oh, is that why or what if? I'm sorry, Judge. Why? Why was there only one foster parent? Go back to the procedural problems in this case. It's years after trial. It's years after that initial investigation. People move. It's hard to find them. They don't respond when, you know, after trial people adjust to the evidentiary hearing under Cullen. This is a preserved claim. Trial counsel made offers of proof in the trial court about the CPS worker who would have rebutted what the foster care agent said. The foster care agent said, excuse me, the CPS worker substantiated the allegation. That's what the jury heard. They didn't hear from the foster care agency expert, but they did hear from the stateside expert. What did the offers of proof add to the two witnesses that he put on at the evidentiary hearing? They add, they add, they flesh out the pattern of allegations. They, and they speak to the character for truthfulness based on someone who had first-hand knowledge of her. And that's the issue the jury has got to decide. Do we believe this? When you add them on to the expert, they matter to the defense when you add them on to the Hamblin's. Okay, you're making an argument of prejudice.  isn't that what you were supposed to prove in the state court? You mean in the evidentiary hearing? Or, I think that, so, in the state courts, most of the time these evidentiary hearings go to ineffective assistance of counsel, which is raised in this case. There is an ineffective assistance claim that's essentially telling the state court, hey, if this isn't on the judge, it's on the lawyer. And that hearing speaks more to what is happening with off-record strategy calls. Why is it that it took five weeks to get the expert picked here? Why is it that, you know, there's this request for an additional hearing? I think in part it is, Your Honor, because that's one of the claims raised. But, no, I don't think that in the state court you need to have an additional hearing to prove prejudice from a preserved constitutional claim in trial. Why did the Court of Appeals remand it for a hearing? It's not entirely clear because their written opinion, excuse me, their written order doesn't tell us. It's done after oral argument. And oral argument featured conversation about both the due process claim and the IAC claim. So it's really not, it's not crystal clear from this record why. But even if this court is, and I don't mean to concede that this court is, even if this court is limited to the evidentiary hearing, one other explanation for why there's just the Hamlins is it's essentially cumulative what the other foster parents are going to say. They're going to, it's the same question you're going to ask. Did you take steps to adopt her? Yes. Did she accuse you of abuse? Not long after that, yes. And... Doesn't that, I mean, if it's cumulative then that sounds like you're saying yeah, they didn't even really need them. They had the Hamlins. But on the other hand, you're saying they only had the Hamlins. So that wasn't enough. I should not have said the word cumulative. I meant more that that's one reason for why the state court evidentiary hearing doesn't feature as many witnesses. One possible explanation in addition to just the procedural problems with making these offers of proof earlier. But the Hamlins, when you add them to the expert and you add them to the samples, they are enough because they're an independent witness. They have no, they just have no skin in the game here. Right, except that the effect of one I think is questionable. The effect of ten could be overwhelming. Could be overwhelming, absolutely. Absolutely, Your Honor. It could be. I think the effect of one when you tie it to Dr. Kaye, or Dr. Kieselowski's report here and his findings with respect to reactive attachment disorder, it's still enough to show that the jury didn't get a full picture here. They didn't get what they needed to determine if this person was telling them the truth. Based both on propensity evidence but also expert testimony and background information. I see that I'm running out of time, Your Honor, but for those reasons we ask that you reverse the district court and grant the writ. Thank you. We thank you both for your briefing and your helpful arguments and the case will be taken under advisement and an opinion rendered in due course. Thank you. You may call the next case.